UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JAMES F. SCHMIDT, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) 1:10-cv-349-JAW |
| | ) |
| CHIEF ADMINSTRATIVE OFFICER, | ) |
| DOWNEAST CORRECTIONAL FACILITY, | ) |
| | ) |
| Respondent | ) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2254 PETITION**

James Schmidt has filed a 28 U.S.C. § 2254 petition advancing seven grounds for federal

habeas relief.  Schmidt was convicted in October 2006 on multiple theft-related counts relating

to financial transactions stemming from Schmidt's involvement in the purchase and renovation

of a building in Calais, Maine.  Apparently Schmidt's vision was that this building would be the

home of Wantaqo'ti Foundation, a legal entity created by Schmidt and that was the formal

obligation holder on the note.  The City of Calais loaned the foundation $100,000 from its

Economic Development Fund for the purchase of a building and necessary renovations.  Neither

Schmidt nor the Foundation made a single loan payment to Calais and they further failed to make

payments in line with agreements as to at least six subcontractors.   After a direct appeal to the

Maine Law Court resulting in the vacation of six of his ten counts of conviction, see State v.

Schmidt (I), 2008 ME 151, 957 A.2d 80,  Schmidt's case was remanded to the trial court for

resentencing.  He ended up with the same consequence – eight-years of concurrent incarceration

on each the three Class B felony theft convictions and four years concurrent on the remaining

Class C conviction.  State v. Schmidt (II), 2010 ME 8, 988 A.2d 975. These affirmances were all

on counts that were not impacted by the first direct appeal.

**Discussion**

**A.     The Criminal Conduct**

The Maine Law Court described Schmidt's criminal conduct as follows:

> In June of 2005, Schmidt began efforts to purchase a three-story building located on Main Street in the City of Calais. Schmidt indicated that he planned to renovate the building on behalf of his non-profit organization, the Wantaqo'ti Foundation (the Foundation), to benefit Native American and disadvantaged people.
> Schmidt presented a business plan to the City to obtain loan funds with which to create retail and residential space in the building. The City, through its Loan Review Board, granted Schmidt a loan from its Economic Development Loan Fund in the amount of $100,000. Of that amount, $70,000 was used to purchase the building, and the remaining $30,000 was to be disbursed in increments to Schmidt as a construction loan to complete the renovations. An additional $40,000 was to be supplied by the Foundation. The parties closed on the property on July 15, 2005.
> Over the next eight weeks, the City disbursed to Schmidt, in increments of a few thousand dollars each week, the $30,000 in construction loan funds. Although the checks were made out to the Foundation, they were deposited into a bank account from which only Schmidt had the right to draw funds. The construction loan funds were to be used only for materials and labor for the building's renovation, and were not to be used for salary payments to Schmidt or to anyone else.
> By the terms of his agreement with the City, Schmidt was to begin making monthly loan repayments to the City on September 1, 2005. Schmidt never paid to the City any amounts due on the loan.
> Meanwhile, Schmidt hired numerous subcontractors and purchased various materials to complete construction on the building. Schmidt failed to pay, in accordance with their agreements, at least six of these subcontractors and suppliers, including: (1) $6729.46 to Gregory Pollack of A & E Plumbing, (2) $3579.39 to William Barnett of Riverside Electric, (3) $8680.89 to Johnson's True Value, (4) $6089.10 to Mark Wright of Mark Wright Construction and Disposal, (5) $1100 to Zaccheriah Gidney, and (6) $2380 to Steven Scott. Schmidt also wrote numerous checks over the course of several weeks totaling more than $10,000 to various subcontractors, suppliers, and other purveyors. Those checks were not honored by the bank because of insufficient funds in the account. Instead, Schmidt used the City's loan funds to pay a salary to himself, and to his girlfriend.

Schmidt (I), 2008 ME151, ¶¶ 2-6, 957 A.2d at 83.   One concern highlighted by Schmidt is that

while the loan was disbursed from the city's Economic Development Loan Fund the loan

2

agreement referenced the less stringent conditions of the Revolving Loan Fund bylaws,

apparently by mistake, and it was the copy of these bylaws that Schmidt retrieved from city hall

after closing on the loan and in these bylaws there was no limitation on the use of the loaned

funds according to the city manager's testimony at trial.  (Trial Tr. Oct. 11, 2006, at 132.)

As the Maine Law Court explained in addressing Schmidt's second direct appeal:

> On remand, Schmidt was sentenced to serve eight years on the Class B
> convictions and four years on the Class C conviction, all sentences to be
> concurrent. He was ordered to pay up to $59,000 in restitution at a rate of $100
> per month, beginning when Schmidt was released from incarceration. In
> sentencing arguments, Schmidt had suggested the $59,000 figure. The court
> ordered an accounting of funds received from the sale of the building involved in
> the transactions that led to the convictions and gave Schmidt leave to seek
> reduction in the amount of restitution after the accounting.

State v. Schmidt (II), 2010 ME 8, ¶ 2, 988 A.2d 975, 976.

## B.     Parameters of 28 U.S.C. § 2254 Review

This court will not grant a petition for habeas relief "with respect to any claim that was

adjudicated on the merits in State court proceedings" unless a state court decision "was contrary

to, or involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States" or "was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1),

(2).  The Maine courts' factual findings "shall be presumed to be correct" and Schmidt bears the

burden of disproving these factual findings by "clear and convincing evidence."  28 U.S.C. §

2254(e)(1).  See also O'Laughlin v. O'Brien, 568 F.3d 287, 298 (1st Cir.2009); McCambridge v.

Hall, 303 F.3d 24, 34-35 (1st Cir. 2002).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

law or if the state court decides a case differently than [the Supreme] Court has on a set of

materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

The United States Congress has insisted upon a gate-keeping exhaustion of state-law remedies requirement with regards to federal habeas claims of state court determinations. See 28 U.S. C. § 2254(b)(1)(A). "To provide the State with the necessary 'opportunity,'" to review his or her claims "the prisoner must 'fairly present' his claim in each appropriate state court … thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004 (citation omitted)); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Pike v. Guarino, 492 F.3d 61, 71 (1st Cir. 2007); Jackson v. Coalter, 337 F.3d 74, 85-87 (1st Cir. 2003).

With respect to the State's burden, in order to be accorded 28 U.S.C. § 2254(d) deference to the Maine Law Court's decision, the state court must have adjudicated the federal claim on the merits. See Clements v. Clarke, 592 F.3d 45, 52 (1st Cir. 2010) ( "A matter is 'adjudicated on the merits' if there is a 'decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.' Teti v. Bender, 507 F.3d 50, 56-57 (1st Cir.2007).").

C.     **Section 2254 title 28 Claims**

After his partially successful direct appeal, Schmidt stands convicted of four counts, three of which are Class B felonies, and he is still serving an eight-year concurrent sentence. In his 28 U.S.C. § 2254 petition and memorandum Schmidt frames only four of his seven 28 U.S.C. § 2254 grounds as constitutional challenges, these four grounds assert that he was denied his Fourteenth Amendment right to due process. The other three grounds assert that the Maine

courts unreasonably applied the statutory requirements for conviction for unauthorized taking and theft by misapplication.

### 1.     *Sufficiency of the evidence challenges to Counts I, VIII, and IX*[1]

In his reply memorandum Schmidt accepts the State's olive branch and characterizes the challenges in Counts I, VIII, and IX as being premised on <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979) and <u>In re Winship</u>, 397 U.S. 358 (1970), invoking the principle that one can only be convicted of a crime upon proof beyond a reasonable doubt of each element of the charged offense.[2]  In his brief to the Maine Law Court Schmidt relied on <u>State v. Smen</u>, 2006 ME 40, 895 A.2d 319, 321, a case which, in turn, relied on <u>State v. Turner</u>, 2001 ME 1925, 766 A.2d 1025, a case citing <u>State v. Black</u>, 2000 ME 211, 763 A.2d 109.  None of these cases addressed the sufficiency of the evidence claims directly under the United States Constitution or mentioned <u>Jackson</u> or <u>In re Winship</u>.  That said, there is no question that the Maine Law Court was applying a standard of proof beyond a reasonable doubt in reviewing the trial court's conviction and that standard of proof beyond a reasonable doubt is the constitutional essence of sufficiency of the evidence challenges.

Schmidt's argument as to these three counts is encapsulated as follows:

> These counts (1,8,9) should be reversed and dismissed.  Count 1 alleges Theft by Unauthorized Taking from the City of Calais.  Count 1 does not meet the statutory requirement for theft – "property of another."  The statute clearly states that property in possession of another may not be deemed property of another who has only a security interest therein.  The City of Calais was the mortgagee and held a duly recorded security interest.  Count 9 alleges Theft by Unauthorized Taking from the City of Calais and/or Wantaqo'ti Foundation (WF).  As to the City of

---

[1]     Schmidt is not challenging his conviction on the tenth count -- negotiating a worthless instrument --  which was upheld on direct appeal.  That was a Class C felony punishable by up to five years. He received a four-year concurrent term on that count.

[2]     This is an instance of a genre of claim that the phrase used, even devoid of reference to a specific United States article or amendments to the Constitution/Bill of Rights, sufficiently evokes the constitutional concern for purposes of exhaustion.

Calais, Count 9 should be dismissed on the same basis as Count 1. As to WF as a victim, Count 9 fails because the statutory definition of "exercises unauthorized control" is not met. The Defendant/Petitioner was the sole legal officer and director of WF. As a result, any legal act authorized, enabled and implemented by the Defendant/Petitioner in conducting the corporate purpose of WF involved the consent of WF. Count 8 alleged Theft by Misapplication of Property. The statute requires the existence of a fiduciary or trust-like agreement limiting the disposition of the mortgage funds. The testimony did not establish either an agreement between the named victims and the Defendant/Petitioner nor a statutory requirement.

(Sec. 2254 Mem. at 25, Doc. No. 1-1.)

      a.      **Ground 1 of the 28 U.S.C. § 2254 Petition- Count I of Schmidt's Conviction**

With respect to his sufficiency of the evidence challenge to Count One, the Maine Law Court provided the following discussion regarding the relevant state criminal statute:

> A theft by unauthorized taking or transfer occurs when the defendant "(1) obtained or exercised unauthorized control (2) over the property of another (3) with intent to deprive the owner of that property." State v. Bouchard, 2005 ME 106, ¶ 15, 881 A.2d 1130, 1135 (quotation marks omitted); see 17-A M.R.S. § 353(1)(A). Such theft is a Class B crime when, as here, the value of the subject property exceeds $10,000. 17-A M.R.S. § 353(1)(B)(1).
>
> The evidence is sufficient to support the jury's finding, beyond a reasonable doubt, that Schmidt misused the money from the loan fund for personal purposes, and thereby committed theft by unauthorized taking or transfer in an amount over $10,000. Although the checks to Schmidt were made out to the Foundation, the State established that Schmidt was the only person who had the right to draw funds on the account in which loan funds were deposited; that Schmidt did not use the money for the purposes intended, but rather used it to pay a salary to himself and his girlfriend, purposes not approved by the City; and that Schmidt retained the loan funds long after he was obligated to have repaid them to the City. Further, Schmidt's intent can be inferred from the evidence.

Schmidt (I), 2008 ME 151, ¶¶ 20, 21, 957 A.2d at 86.

In his 28 U.S.C. § 2254 reply memorandum, Schmidt argues that the Maine Law Court's analysis "does not address the Petitioner's primary grounds in his appeal before the Maine Law Court and the reason he seeks relief in the Federal District Court under the habeas statute – that a

key element of the offence charged was missing – that the property involved was not the property of another as defined by the statutes." (Reply Mem. at 4-5, Doc. No. 4.)

The definitional element of the applicable Maine statute includes the following definition:

> "Property of another" includes property in which any person or government other than the actor has an interest that the actor is not privileged to infringe, regardless of the fact that the actor also has an interest in the property and regardless of the fact that the other person might be precluded from civil recovery because the property was used in an unlawful transaction or was subject to forfeiture as contraband. <u>Property in the possession of the actor may not be deemed property of another who has only a security interest therein, even if legal title is in the creditor pursuant to a conditional sales contract or other security agreement.</u>

17-A M.R.S. § 352(4) (emphasis added).   The Maine Law Court did address this provision in Schmidt's direct appeal as it pertained to the six unpaid subcontractors:

> Our decision in [State v.] Nelson, [1998 ME 183, ¶8, 714 A.2d 832, 834][3] is relevant to Schmidt's case. The criminal statute defines "[p]roperty of another" as "property in which any person or government other than the actor has an interest that the actor is not privileged to infringe, regardless of the fact that the actor also has an interest in the property." 17-A M.R.S. § 352(4) (2007). Further, "[p]roperty in the possession of the actor may not be deemed property of another who has only a security interest therein, even if legal title is in the creditor pursuant to a conditional sales contract or other security agreement." 17-A M.R.S. § 352(4). In this case, the loan funds, at least at the time, were properly in Schmidt's possession, and did not constitute property belonging to the six unpaid subcontractors and suppliers. Rather, the victims had only a right to payment that could afford them a security interest in the form of a mechanic's lien on the property. We therefore vacate Schmidt's convictions as to Counts II through VII for lack of sufficient supporting evidence.

<u>Schmidt (I)</u>, 2008 ME 151, ¶ 21, 25 957 A.2d at 87.

---

[3] In <u>Nelson</u>, the Maine Law Court reasoned:
The contracts entered into between Nelson and the landowners did not provide that he act as their agent or that he hold the proceeds from the sale of the timber in trust for them. Although Nelson is legally obligated to compensate the landowners for the timber, his failure to do so does not constitute theft by misapplication of property. Because we conclude that Nelson's conviction must be set aside, we need not address his other contentions.
State v. Nelson, 1998 ME 183, ¶8, 714 A.2d 832, 834

It is plain that the Maine Law Court addressed this claim as a sufficiency of the evidence challenge and, as Schmidt asserts, it had before it the argument that Schmidt makes here concerning "the property of the other" element.  With regards to the loan disbursements made by the City to the Foundation, there is no similar dynamic.  The cash money was clearly the property of the City of Calais.  The fact that Calais also had an interest as mortgagee in the real estate was treated as irrelevant to this element of the criminal offense.  Schmidt was not charged with stealing the real estate from the City of Calais.  I agree with the State that what Schmidt is essentially asking this court to do is to interpret a state criminal statute otherwise than how the Maine Law Court has.  "A federal court may not issue the writ on the basis of a perceived error of state law."  Pulley v. Harris, 465 U.S. 37, 41 (1984).  See also Barclay v. Florida, 463 U.S. 939, 957-58 (1983) ("[The petitioner's] varied assertions seem to suggest that the Florida Supreme Court failed to properly apply its own cases in upholding petitioner's death sentence. The obvious answer to this question …is that mere errors of state law are not the concern of this Court, Gryger v. Burke, 334 U.S. 728, 731, (1948), unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.").

**b.      Ground 2 of the 28 U.S.C. § 2254 Petition- Count IX of Schmidt's Conviction**

Schmidt describes his Section  2254 Ground 2/Count IX sufficiency-of-evidence challenge as differing from his Count I (Section 2254 Ground 1) challenge only in that it names the victim as "the City of Calais and/or WF" and argues that "the same statutory hurdles facing Count I must be met in Count 9."   (Sec. 2254 Mem. at 33.)  Reasoning that as to the City of Calais this count could not survive because it is "an exact repetition" of Count I, Schmidt perceives that the only tenable aspect of this count is that which relates to the Foundation. (Id.) He argues that the first requirement for a conviction of this count so-framed is that he exercised

unauthorized control on the assets, the equivalent of common law larceny requiring that the taking be without consent of the property owner. (Id.) As the sole director and sole officer of the Foundation he was authorized to bind the Foundation. (Id. at 33-34.) He insists that all the payments he made in his role at the Foundation were in furtherance of the corporate goals and business of the Foundation; "[t]he overwhelming majority of the expenditures (at least 94%) were costs directly related to the renovation project." (Id. at 34.) The remainder was corporate administrative expenses. (Id.) Schmidt opines that he "could not reasonably be considered to have 'exercised unauthorized control' as described in the statute and normal meaning of common law." (Id.)

The Maine Law Court addressed this claim as follows:

> Schmidt's conviction for theft in Count IX stems from the State's allegations that Schmidt, as an agent of the Foundation, misappropriated loan funds for his own personal benefit rather than compensating subcontractors and suppliers. As discussed above, the State established that Schmidt obtained funds in the name of the Foundation that were to be used for building materials and labor, and that Schmidt misappropriated those funds by keeping the funds for his own salary and by paying some of the funds to his girlfriend. Thus, Schmidt kept the funds for his personal use rather than paying the subcontractors and suppliers he owed for materials and labor already supplied, contravening the terms pursuant to which he was given the funds.

Schmidt (I), 2008 ME 151, ¶ 28, 957 A.2d at 88.

In a similar vein as his response to Ground 1, in his reply memorandum Schmidt insists that this discussion by the Maine Law Court did not address his claim that the conviction could not be sustained because two elements of the charged offense were absent: "(i) property of another and, (ii) exercising unauthorized control." (Reply Mem. at 7.) With regards to the Maine Law Court's reflection that he "obtained funds in the name of the Foundation that were to be used for building materials and labor, and that Schmidt misappropriated those funds," Schmidt insists that this conclusion is faulty because the terms of the note and mortgage did not

prohibit the use of funds to pay his salary and, in fact, his original application identified salary payments as a forecasted expenditure; the note and mortgage did not require him to use the funds exclusively for building materials and labor; Schmidt did not meet the statutory definition of "exercising unauthorized control" but the Maine Law Court disregarded this necessary element; and the necessary element of "property of another" was also not addressed by the Law Court. (Id. at 7-8.)

To the extent that Schmidt is complaining about the statutory interpretation of the Maine Law Court apropos a Maine criminal statute, this is not a sustainable 28 U.S.C. § 2254 claim. Beyond quarreling with the meaning of "property of another" and "exercising unauthorized control." Schmidt offers a preliminary summary of the trial transcripts at the beginning of his memorandum (Sec. 2254 Mem. at 10-20) and does highlight what evidence supports this ground of his § 2254 petition (id. at 33-34) but this is not a true sufficiency of the evidence challenge to the evidence relied on by the jury or the Maine Law Court. Schmidt relies on what is essentially an argument that the Maine Courts have misinterpreted the criminal statute. See Pully, 465 U.S. at 41; Barclay, 463 U.S. at 957-58.

   **c.**  **Ground 3 of 28 U.S.C. § 2254 Petition - Count VIII of Schmidt's Criminal Conviction**

In Schmidt's habeas petition and memorandum he also challenges the state courts' adjudication of his Count VIII conviction for theft by misapplication of property relating to his payment of loan proceeds to contractors doing the renovation work. Schmidt states that he was the sole officer of the Foundation and was responsible for all disbursements; the trial testimony was that the expenditures made were for expenses directly related to the project per the Project Plan submitted to the City as part of the mortgage process; and none of the alleged victims claimed an agreement regarding the exclusive right or priority vis-à-vis disbursements of the

mortgage funds.  He emphasizes that the mortgage funds were not subject to a statutory mandate regarding proper use.  (Sec. 2254 Pet. at 14.)  He surveys Maine law on 17-A M.R.S. § 358(1) and § 351, citing State v. Marcotte, 418 A.2d 1118 (Me. 1980).[4]   (Sec. 2254 Mem. at 36-37.)

He opines:

> The Maine Supreme Judicial Court has very few cases under the section where the limits of the definition laid out in Marcotte have been explored.  The essence of this complex statutory section then is if there exists no agreement, or legal obligation to make payment from the property obtained, there can be no criminal liability.

(Id. at 37.)

As to his challenge to this count of conviction on direct appeal, the Maine Law Court reasoned:

> A theft by misapplication of property occurs when the defendant:
>> obtains property from anyone or personal services from an employee upon agreement, or subject to a known legal obligation, to make a specified payment or other disposition to a 3rd person or to a fund administered by that person, whether from that property or its proceeds or from that person's own property to be reserved in an equivalent or agreed amount, if that person intentionally or recklessly fails to make the required payment or disposition and deals with the property obtained or withheld as that person's own.
>
> 17-A M.R.S. § 358(1)(A); see Nelson, 1998 ME 183, ¶ 6, 714 A.2d at 833-34. Charges of theft by misapplication should not result for "mere civil failure to perform a contractual obligation," and "criminal liability should be limited to those situations [involving] a kind of trust or fiduciary obligation." Nelson, 1998 ME 183, ¶ 6, 714 A.2d at 833-34 (quotation marks omitted). Thus, the State was required to establish the existence of an "agreement or legal obligation to make payment from property obtained or its proceeds or from property to be reserved in equivalent amount," either by establishing that the defendant acted as the victim's

---

[4]    In that case the Law Court summarized its holding:
The line had been drawn to limit criminal liability to those situations where a kind of trust or fiduciary obligation required an equivalent amount to be reserved. Accordingly, we hold that under section 358 of the Maine Criminal Code, if there exists no agreement or legal obligation to make payment from the property obtained or its proceeds or from property to be reserved in equivalent amount, there can be no criminal liability. This requirement is similar in nature to a fiduciary or trust relationship.
State v. Marcotte, 418 A.2d 1118, 1121 (Me. 1980)

agent or that he held proceeds in trust for the victim. Id. ¶¶ 6, 8, 714 A.2d at 834 (quotation marks omitted). When the value of the property exceeds $10,000, as here, theft by misapplication of property is a Class B crime. 17-A M.R.S. § 358(1)(B)(1).

Schmidt's conviction for theft in Count VIII is based on evidence that Schmidt, as an agent for the Foundation, improperly retained money intended to compensate subcontractors, suppliers, and others whose labor and services were utilized in renovating the Main Street building. The State did establish that Schmidt obtained and administered City money on behalf of the Foundation totaling more than $10,000, on the condition of payment of those funds to suppliers and subcontractors for goods and services rendered in renovating the building, and that Schmidt failed to make those requisite payments, instead retaining the money for personal purposes for himself and his girlfriend. A reasonable view of the evidence also establishes that Schmidt had a trust obligation to the Foundation, as the sole person with control over its funds, and supports a conviction of theft by misapplication of property.

Schmidt (I), 2008 ME 151, ¶¶ 26, 27, 957 A.2d at 87-88.

In his reply memorandum Schmidt again faults the Maine Law Court for not considering the issue raised by Schmidt in his appellate brief asserting that essential elements of the crime were missing. He argued: "No legal obligation existed to reserve property for payment of the subcontractors and material suppliers; no fiduciary or trust relation existed; the mortgage documents did not impose a contractual obligation on the Petitioner to reserve property for payment of suppliers and subcontractors named in the indictment; and the mortgage documents did not impose any restrictions on the use of the loaned funds." (Reply Mem. at 9.)

Once again, to the extent that Schmidt is complaining about the statutory interpretation of the Maine Law Court vis-à-vis this Maine criminal statute, this is not a sustainable 28 U.S.C. § 2254 claim. Certainly, Schmidt does not agree with the Maine Law Court's interpretation of 17-A M.R.S. § 358(1)(A) as set forth in the above passage but he does not attempt to point to the trial evidence to support a Jackson type insufficiency of the evidence claim. Rather he relies on conclusory assertions that no legal obligation existed on his part, no fiduciary or trust relation existed, no contractual obligation could be premised on the mortgage documents to reserve

money for the contractors. He again relies on what is essentially an argument that the Maine

Courts have misinterpreted his legal obligations as defined by state law. See Pully, 465 U.S. at

41; Barclay, 463 U.S. at 957-58. Indeed, in framing this ground Schmidt argues that the Maine

Law Court unreasonably applied the statutory requirements for conviction under this statute "to

the facts determined during" his trial. (Sec. 2254 Mem. at 35.) In other words his is not an

argument that the evidence was insufficient but that the Law Court's statutory interpretation was

erroneous.

### 2.     *The Four Sentencing Challenges*

Schmidt summarizes his quartet of challenges to his sentence as follows. He maintains

that his,

> right to challenge the factual accuracy of the Pre-sentence Investigation Report
> (PSI) was limited by the financial inability to obtain investigatory resources
> which could disprove the statements and allegations in the PSI. The Court did not
> approve his repeated requests for resources and ignored his pro-se motions
> challenging the accuracy of the PSI. Additionally, the restitution order was
> defective in the face of a clear preponderance of evidence that the
> Defendant/Petitioner's present and future incapacity to pay. Additionally, the
> process did not include a factual determination of economic loss. Finally the
> Defendant/Petitioner was denied the right to appear, make motions on his own
> behalf and pursue his defenses in clear violation of the constitution of the State of
> Maine.

(Sec. 2254 Mem. at 25, Doc. No. 1-1.)

### a.      Ground 4- 14th Amendment challenge due to lack of an evidentiary hearing on the State's Pre-Sentence Investigation Report and denial of funds to investigate the errors therein

With respect to his first challenge to his sentence Schmidt reports that on January 22,

2009, his pro se motion to compel production of the pre-sentence investigation report was

granted. However, Schmidt also filed a pro se ex parte motion for funds for an investigator, a

pro se ex parte motion for funds for a financial analyst, and a pro se motion objecting to the pre-

sentence investigation report. These three motions were returned to Schmidt without actions on March 9, 2009, by the clerk of the superior court on the grounds that the court would not accept pro se motions. On April 6, 2009, Schmidt's attorney submitted an ex parte motion for funds which was denied on May 1, 2009, immediately prior to his re-sentencing hearing. Schmidt points out that counsel objected to the pre-sentence investigation report at the original sentencing in 2007 and his 2009 re-sentencing.

It is Schmidt's contention that the information relied upon by the superior court in the second step of the sentencing analysis was inaccurate. He indicates that he repeatedly insisted on his right to cross-examine the witnesses relied on in this report concerning his past-conduct and character but was not given the resources necessary to do this. Schmidt complains that the sentencing judge relied on three incidents from his past as aggravating factors: A criminal conviction in Connecticut relating to a 1988 real estate limited partnership; conduct described in a 1988 newspaper article relating to Schmidt's activities in a Connecticut franchise which was not part of a indictment or trial; and conduct described at the summary judgment phase of civil litigation in Illinois vis-à-vis which he was unable to defend his case as a consequence of his pretrial incarceration in Maine. Schmidt acknowledges that the Maine Supreme Court addressed some of the issues raised by the use of uncharged criminal conduct but has not ruled on the use of civil conduct as an aggravating sentencing factor. He relies on State of Maine v. Dumont, 507 A.2d 164 (Me. 1986).

Schmidt also highlights that he was not given access to the report that exceeded 170 pages -- and took the preparer over seven months to compile -- until the day before his initial sentencing in 2007 and he was never given the resources to rebut the information. Schmidt declares: "This Pre-Sentence Investigation Report crossed the line of completing a statutory

duty and became an accusatory agent acting on behalf of the State by repeating hearsay, innuendo, misreporting facts, and offering derogatory, unsubstantiated invective against" Schmidt. (Sec. 2254 Mem. at 51.) In addition he challenges the reliability of the objectivity of the investigator preparing the report because the preparer was a Calais resident and the City was a central victim in the prosecution's case.

As to this area of challenge the Maine Law Court ruled:

Schmidt also contends that the sentence imposed was a violation of law, his time of incarceration was excessive, and the amount of restitution ordered exceeded the losses caused by his crimes. He further asserts that his sentence was imposed without regard to the so-called <u>Hewey</u> analysis for sentencing propriety specified by 17-A M.R.S. § 1252-C (2009). <u>See</u> <u>State v. Hewey</u>, 622 A.2d 1151, 1154-55 (Me. 1993).

A sentence of any length may be appealed directly as a matter of right when the defendant claims that the sentence is illegal, imposed in an illegal manner, or beyond the jurisdiction of the court, and the illegality appears plainly in the record. <u>State v. Grindle</u>, 2008 ME 38, ¶ 13, 942 A.2d 673, 677; <u>State v. Hodgkins</u>, 2003 ME 57, ¶ 5 n. 3, 822 A.2d 1187, 1190-91; <u>State v. Ricker</u>, 2001 ME 76, ¶ 18, 770 A.2d 1021, 1026-27. However, on direct appeal, we review only the legality, not the propriety, of a sentence. <u>Hodgkins</u>, 2003 ME 57, ¶ 5 n. 3, 822 A.2d at 1190; <u>State v. Mahan</u>, 1998 ME 143, ¶ 1 n. 3, 711 A.2d 1314, 1315. Here, the record from the sentencing court does not include, separate from the notice of appeal, any application for leave to appeal the sentence pursuant to M.R.App. P. 20(a)(1).

The record here does not indicate that the sentence imposed was illegal or imposed in an illegal manner, <u>see</u> <u>State v. Soucy</u>, 2006 ME 8, ¶ 11, 890 A.2d 719, 723: the sentences of incarceration were within the range authorized by law; Schmidt himself originally suggested the $59,000 amount of restitution ordered; restitution "up to" a specified amount may be ordered, <u>see</u> <u>State v. Bouchard</u>, 2005 ME 106, ¶ 22, 881 A.2d 1130, 1136-37; and Schmidt failed to demonstrate his incapacity, when released, to pay $100 monthly restitution, *see* 17-A M.R.S. § 1325(4) (2009). Thus, no illegality is indicated in the sentence imposed by the court.

We do not review Schmidt's claims of impropriety in sentencing. Following a timely application for leave to appeal sentence, such claims must first be considered by our Sentence Review Panel, pursuant to M.R.App. P. 20. We consider a challenge to the propriety of a sentence only when the Sentence Review Panel, after review of the sentencing record, first grants the application to allow an appeal of sentence. <u>See</u> M.R.App. P. 20(g). As the Advisory Notes to Rule 20 state:

> If an individual is convicted and that individual wishes to appeal both the
> conviction and the sentence then: (1) to appeal the conviction, a notice of
> appeal must be filed in accordance with M.R.App. P. 2(b)(2)(A); and (2)
> to appeal the sentence, the application to allow an appeal of sentence must
> be filed under M.R.App. P. 20. A discretionary sentence appeal is not
> automatically considered as part of an appeal of a conviction. The Law
> Court must still engage in its discretionary choice as to whether [to] allow
> [ ] a sentence appeal.
>
> M. R. App. P. 20 Advisory Note, Oct. 15, 2001.
>
> Because no separate application to allow an appeal of sentence was filed,
> and, consequently, there has been no recommendation from the Sentence Review
> Panel to place the appeal properly before us, the part of the appeal that challenges
> the propriety of the sentence must be dismissed.

Schmidt (II), 2010 ME 8, ¶¶ 3-8, 988 A.2d at 976 -77 (footnote omitted).   In a footnote, the Law

Court observed:  "Nor does it appear that any review of the propriety of the sentence could be

successful, considering the serious nature of Schmidt's crimes and the violation of public trust

involved, his past participation in significant fraudulent transactions in two other states, and his

suggestion of the $59,000 restitution figure."  Schmidt (II), 2010 ME 8, ¶ 7 n.2, 988 A.2d at 977

n.2.

The State argues that the fact that Schmidt did not apply for leave to appeal the propriety

of his sentence to Maine's Sentence Review Panel after either of his sentencing proceedings, it

was appropriate for the Maine Law Court to rely on this procedural default in its opinion on

Schmidt's re-sentencing appeal.   (Answer at 7-8.)  The State further argues in the context of this

federal habeas proceeding:

> Even if Schmidt had not procedurally defaulted this claim in the state
> courts, it is meritless. The United States Supreme Court has held that
> "[i]nformation marshalled by a probation officer in a pre-sentence report is
> presumed to be reliable because that officer is a neutral professional who ['][has]
> not been trained to prosecute but to aid offenders.[']" Williams v. New York, 337
> U.S. 241, 249 (1948). "Nevertheless, due process requires that the defendant be
> afforded a timely examination of the report and an opportunity to dispute any
> facts contained therein." State v. Dumont, 507 A.2d 164, 166 (Me. 1986).
>
> In this case, Schmidt and his counsel were provided with the PSI before
> the sentencing proceeding; at the sentencing proceeding, they indicated that it

contained numerous inaccuracies; and Schmidt's counsel was allowed the opportunity to cross-examine the author of the PSI. Before the resentencing proceeding, Schmidt himself was provided with a copy of the PSI months in advance, and he and his counsel submitted numerous documents with his resentencing memorandum to challenge the allegations in the PSI. At the resentencing proceeding, Schmidt's counsel stated, "now we've actually been afforded an opportunity to respond to [the PSI] appropriately..." (Resentencing Transcript at 18). "When Schmidt himself was offered an opportunity to address the sentencing court, he declined. ..." (Resentencing Transcript at 31). Under these circumstances, Schmidt has received all the process to which he was due.

(Id. at 8.)[5]

Schmidt has framed this challenge as being one under the Law Court's Dumont and the Maine State Constitution; he has not articulated a federal constitutional theory.   Furthermore, I agree with the State that the Maine Law Court was entitled to reject this claim as to sentence propriety on the basis of procedural default.  See, e.g., Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010);  Glacken v. Dickhaut, 585 F.3d 547, 550 -551 (1st Cir. 2009).   To the extent the claim was framed as a due process claim on direct appeal, I agree with the State that certainly by the time of Schmidt's second sentencing hearing he had received all the process to which he was due.  Schmidt cites no case, and I know of none, where the court has found a due process violation because of the failure of the State to provide the services of an investigator to investigate the allegations in the presentence report.  Schmidt knew what those allegations were because he had access to the report.   He was given a full opportunity to refute the allegations with the information he had in his possession.

**b.     Ground 5 – 14th Amendment due process challenge to the imposition of a restitution order beyond Schmidt's capacity to pay going forth and Ground 6 – 14th**

_____

5       The State's citation to Williams for the entire characterized  holding overreaches a bit as it is actually Dumont, and not the 1984 United States Supreme Court, that contains the clause," Information marshalled by a probation officer in a pre-sentence report is presumed to be reliable because that officer is a neutral professional who…."  507 A.2d at 166.  While in some circumstances this might be a significant point to unravel, in this case it is not based on my analysis below that this was not raised as a federal constitutional claim and that the claim is not subject to federal habeas review because it was procedurally defaulted.

**Amendment due process challenge regarding insufficient factual inquiry of economic loss prior to imposing and upholding sentence and restitution order and denying Schmidt's request for funds for expert evidence on these concerns**

Schmidt's next challenge to his sentence, federal habeas Ground 5, pertains to his restitution order. He points out that the trial court approved his application for court-appointed counsel due to his indigency. He further highlights the sentencing court's awareness that there was a 30-million-dollar civil judgment against him in Illinois. In his view, a court ruling recognizing his indigent status and the fact that he had this enormous civil judgment indicates that he does not have the capacity now or in the near future to pay restitution. He faults the sentencing judge for not adequately considering his capacity to pay even when the state did not refute or dispute his assertion of incapacity to pay.

In his 28 U.S.C. § 2254 Ground Six, Schmidt asserts a denial of due process claim premised on his assertion that the state court did not make a sufficient or sound inquiry into the amount of economic loss attributed to Schmidt for sentencing purposes. He complains that at trial the State did not present witness evidence to establish amounts as to economic or property loss within the meaning of 17-A M.R.S. § 353(1)(A) and (B)(1). He maintains that the Maine Law Court's decision on his first direct appeal vacating his convictions on Counts II through VII means that the portion of Count VIII reliant on the theft allegations in those counts cannot be included in the property loss sentencing calculations. From this vantage point he argues that the only tenable economic loss pertaining to Count VIII is the amount of misapplied mortgage proceeds and not unpaid debts. Apropos this ground, Schmidt repeats his dissatisfaction with the superior court's unwillingness to pay for a court appointed expert -- forwarded in a motion for resources -- to develop a defense case on the limitations of loss. He articulates an equal protection claim as non-indigent defendants would be able to make such a showing of actual loss

whereas indigent defendants cannot. He feels that he was entitled to an evidentiary hearing to present evidence on loss and the right to cross-examine any state expert.

It is the State's response in this proceeding that Schmidt did not adequately apprise the Maine Law Court of the federal nature of these claim but instead relied on an argument that it did not comply with the state statutory requirement. The State cites <u>Baldwin v. Reese</u>, 541 U.S. 27 (2004) for the proposition that these claims are not entitled to federal habeas review because Schmidt did not "fairly present" a claim to the Maine Law Court apprising it that he was asserting a right under the United States Constitution. It also reiterates that questions of state law are not cognizable in 28 U.S.C. § 2254 proceedings. <u>Pulley</u>, 465 U.S. at 41; <u>Barclay</u>, 463 U.S. at 957-58.

In his reply memorandum Schmidt concedes that these two counts are pretty much joined at the hip. He insists that these issues were raised in the Maine Superior Court and appealed to the Maine Law Court and seems to believe that his perseverance in advancing the facts underlying these claim, although framed as a challenge based on state law grounds, suffices for exhaustion entitling him to federal habeas review. Not so. This court cannot provide redress as to claims premised on state law grounds even if those claims are exhausted as such. The point of the 28 U.S.C. § 2254 exhaustion requirement as articulated in <u>Baldwin</u> is to allow the state court an opportunity to weigh the merits of a <u>federal</u> constitutional claim prior to federal court review; it is not an avenue for reinterpretation of state laws and precedents by the federal courts when a petitioner complains that he has no further recourse or state corrective process, as Schmidt maintains here.

      **c.    Ground 7-14th Amendment due process challenge regarding the denial of Schmidt's right to make <u>pro</u> <u>se</u> motions on his own behalf and pursue his defenses**

**c.     Ground 7-14[th] Amendment due process challenge regarding the denial of Schmidt's right to make <u>pro</u> <u>se</u> motions on his own behalf and pursue his defenses**

And finally,[6] Schmidt complains of what he sees as a due process infirmity in the trial court's refusal to countenance his pro se motions filed in January and February of 2009. He also explains that through court-appointed counsel he requested permission to present oral argument on his appeal before the Maine Law Court (according to Schmidt he alone prepared briefs for his appeal) but the Chief Justice denied this request. He relies on Article I, section 6 of the Maine State Constitution which specifies in part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and his counsel, or either, at his election." The State points out that this is not a claim cognizable in a 28 U.S.C. § 2254 proceeding as it is not premised on a violation of the United States Constitution and even if Schmidt is correct in his interpretation of his right under the Maine State Constitution this right is not subject to federal habeas redress. Schmidt attempts to counter this argument by pointing out that the state courts refused to countenance his Maine constitutional claim so there is an absence of available state corrective process or circumstances exists that render such a process ineffective. (Reply Mem. at 11-12.) Schmidt has construed the language of the 28 U.S.C. § 2254(b)(1)(B) exhaustion prerequisite to federal habeas review as a backdoor to circumvent the 28 U.S.C. § 2254(a) threshold that our court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."[7]

_____

[6]   I acknowledge that Schmidt requests a cumulative error review. It is not sustainable for reasons that I hope are apparent based on my discussion of the individual grounds; 0+0+0+0+0+0 does not make 1.

[7]   This provision of the Maine Constitution has led to some interesting footprints in the Maine Law Court jurisprudence. See, e.g., State v. Gilman, 489 A.2d 1100, 1102 -1103 (Me.,1985) (addressing the denial of the right of the defendant to make a closing argument, "either himself or through counsel," acknowledging that it is waivable); State v. Dyer, 371 A.2d 1079, 1085 (Me. 1977) ("Our Constitution extends to the accused after conviction the right to be heard 'by himself and his counsel, or either, at his election.'"); see also State v. Dumont, 507 A.2d 164, 169 (Me. 1986).
.

20

Faretta v. California, 422 U.S. 806 (1975) addressed the question of "whether a State may constitutionally hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense." Id. at 807. This was "not an easy question," but the Court "concluded that a State may not constitutionally do so." Id. However, Schmidt's claim is not that he wanted to conduct his defense entirely on his own, see McKaskle v. Wiggins, 465 U.S. 168 (1984)("Wiggins' complaint is directed not at limits placed on *his* participation in the trial, for there clearly were none. It is directed instead at the allegedly inadequate limits placed on standby counsel's participation. At trial Wiggins objected to the very fact that counsel would remain available to assist him. Wiggins has abandoned that objection; he now contends only that his Faretta right to present his defense pro se was impaired by the distracting, intrusive, and unsolicited participation of counsel throughout the trial."). Schmidt wanted the Maine court to allow pro se pleadings contemporaneous with the pleading filed on his behalf by counsel. In McKaskle the United States Supreme Court clarified "Faretta does not require a trial judge to permit 'hybrid' representation" involving stand-by counsel. Id. at 183-84. It is certainly permissible to allow the type of hybrid representation attempted by Schmidt, but there is no Supreme Court precedent suggesting that a court must allow pro se filings when still actively represented by an attorney. In fact, the Eighth Circuit has concluded that there is no such right. See Brasier v. Jeary, 256 F.2d 474, 478 (8th Cir. 1958) ("We conclude that the appellant has no constitutional or other right to conduct his own case pro se and have the aid of counsel to speak and argue for him at the same time."); accord United States v. Williams, 557 F.3d 943 (2009); United States v. Agofsky, 20 F.3d 866 (8th Cir. 1994); see generally 32 Am. Jur. *Federal Courts* § 150 (updated November 2010). In other words, the state's adjudication did not result "in a decision that was contrary to, or involved an unreasonable application of,

clearly established Federal law, <u>as determined by the Supreme Court of the United States</u>." 28

U.S.C. § 2254(d)(1)(emphasis added), even if one accepts Schmidt's contention that he is

entitled to federal habeas review of the Maine court's decision.[8]


## Conclusion

For the reasons stated above I recommend that the Court deny Schmidt 28 U.S.C. § 2254

relief.

### NOTICE

A party may file objections to those specified portions of a magistrate
judge's report or proposed findings or recommended decisions entered pursuant to
28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought,
together with a supporting memorandum, within fourteen (14) days of being
served with a copy thereof. A responsive memorandum shall be filed within
fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de
novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

January 7, 2010

---

[8]      In 1983 the United States Supreme Court issued <u>Morris v. Slappy</u>, 461 U.S. 1 (1983). This dispute in that case was that a defendant was assigned a replacement public defender shortly before trial because the public defender initially assigned to his case required a lengthy recovery from surgery; the defendant was discontent with this arrangement and argued <u>pro se</u> to the trial court claiming he was underrepresented by his new counsel due to a lack of adequate time to prepare. <u>Id.</u> at 4-9. The Supreme Court concluded that the Ninth Circuit had erred in its determination "that the Sixth Amendment right to counsel 'would be without substance if it did not include the right to *meaningful attorney-client relationship.*'" <u>Id.</u> at 13 (quoting (and adding emphasis) <u>Slappy v. Morris</u>, 649 F.2d 718, 720 (9th Cir. 1981)). This case does not establish a right to file <u>pro se</u> filings while being represented by counsel vis-à-vis who there is no contention in terms of adequacy of representation.